IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | No. 10 CV 2546 |
| CHICAGO H&S HOTEL PROPERTY L.L.C., | ) | |
| | ) | Judge Robert W. Gettleman |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MIRABELLA FOUNDATION, | ) | Appeal from the United States |
| | ) | Bankruptcy Court for the |
| Claimant-Appellant, | ) | Northern District of Illinois |
| v. | ) | |
| | ) | Case No. 07-20088 |
| CHICAGO H&S HOTEL PROPERTY L.L.C., | ) | |
| | ) | |
| Debtor-Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant-appellant Mirabella Foundation ("Mirabella") appeals from an order of the

United States Bankruptcy Court for the Northern District of Illinois disallowing an amended

claim filed by The Formula Inc. ("The Formula"). For the following reasons, the court affirms

the ruling of the bankruptcy court.

**FACTS**

Debtor-appellee Chicago H&S Hotel Property LLC ("Debtor") acquired Hotel 71—a 40-

story, 437-room hotel in Chicago—in 2005, intending to convert some or all of it into a

condominium hotel. In preparation for the conversion project, debtor entered into presale

agreements with a corporation known as The Formula, through which individual investors ("unit

buyers") were offered the opportunity to buy condominium units in Hotel 71 when completed.

Through The Formula, debtor entered into a Right of First Offer Agreement with each of 170

unit buyers. Each unit buyer executed a substantially similar agreement that entitled The

Formula to a fee when the unit was resold.  The unit buyers all made earnest money deposits of

$10,000 into an interest-bearing escrow account at Chicago Title & Trust.

In spring 2005, debtor and The Formula had a dispute over whether the unit buyers could

resell their units before the remaining unsold units were sold.  To resolve that dispute, debtor and

The Formula entered into individual settlement agreements with the unit buyers.  Each

settlement agreement, entitled "Listing Agreement to Right of First Offer Agreement and Listing

Agreement to Upcoming Contract for Purchase and Sale," included three provisions at issue in

the instant case.  Paragraphs 11 and 12 required debtor to resell the unit and pay 17.65 percent of

the purchase price ("resale profits") to the unit buyer.  Paragraph 31 specified that if debtor

failed to provide "condo docs" (a term defined in the settlement agreement) within six months of

the unit buyer's initial deposit, the unit buyer could choose between two remedies, one of which

entitled the unit buyer to monthly $10,000 "extension fees" until the buyer was offered a

purchase contract.  This provision expressly stated that if a unit buyer elected the extension fees,

those fees were to be received by the buyer.  Paragraph 27 required debtor to pay a six percent

sales commission to a broker appointed by The Formula.  Mirabella now alleges that debtor

failed to perform its obligations under the settlement agreements by failing to resell and pay

resale profits, failing to pay extension fees, and failing to pay the sales commissions.

Debtor never filed a condominium declaration, and by the end of 2005 it was apparent

that the Hotel 71 condominium project would not be completed.  In October 2007, debtor filed a

voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and in December 2007,

debtor filed its Chapter 11 Plan of Reorganization.

While that was pending, in January 2008, The Formula sent letters to all of the unit buyers, offering each of them the option to "assign all of their contractual rights to Formula in exchange for payment of $10,000." 87 unit buyers accepted this offer, executing opt-in agreements that assigned their rights to The Formula. The Formula objected to the hotel sale and plan of confirmation on their behalf.

While the bankruptcy case was pending, Chicago Title & Trust (where the $10,000 deposits were being held in escrow) brought an adversary proceeding seeking to distribute the funds it was holding in escrow. In a contested bankruptcy court proceeding, Mirabella (as The Formula's assignee) claimed the interest earned on the deposits made by the 87 unit buyers. The other unit buyers were paid the interest earned on their deposits. 136 unit buyers filed proofs of claims, and the bankruptcy court disallowed all claims in excess of the $10,000 deposit and earned interest.

In February 2008, The Formula filed an amended claim, seeking $22,098,390 in three types of payments on behalf of 78 unit buyers: (1) resale profits, calculated based on the default closing price specified in the settlement agreements; (2) extension fees of $10,000 per unit per month; and (3) commissions of 6 percent of the default purchase price of the 78 units. None of the 78 unit buyers whom The Formula purported to represent had assigned their rights to The Formula.

On March 21, 2008, after a lengthy trial, the bankruptcy court confirmed debtor's plan of reorganization and authorized the sale of Hotel 71. The plan provided for the $10,000 escrowed deposits to be returned, with earned interest, to the unit buyers, in full settlement of the unit buyers' claims. The sale closed, and the plan became effective, on July 16, 2008.

In August 2008, The Formula assigned its claim to Mirabella. Debtor filed an objection

to the claim in January 2010, based on various theories including The Formula's lack of

contractual rights, the complete satisfaction of the claim by the full return of the unit buyers'

deposits and earned interest, and subordination under the Bankruptcy Code. In March 2010, the

bankruptcy court disallowed the claim, finding that the settlement agreements' terms gave the

unit buyers exclusive rights to the resale profits and extension fees, and gave the exclusive rights

to commissions to a broker to be appointed by The Formula.

## DISCUSSION

### I.    Legal Standards

On appeal, the bankruptcy court's conclusions of law are reviewed de novo. Meyer v.

Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994). Its factual findings are reviewed for clear error.

Fed. R. Bankr. P. 8013.

### II.    Analysis

Mirabella argues that the bankruptcy court erred in disallowing Mirabella's claim to

resale profits and extension fees based on a legally incorrect assumption that this claim was

within Illinois' statute of frauds. 740 Ill. Comp. Stat. 80/1 et seq. (West 2004). According to

Mirabella, the settlement agreements demonstrate that The Formula and the unit buyers bought

the units solely for speculation and profit, and these transactions are therefore governed by a

well-established rule that the purchase of real estate "made for the purpose of sale and the

acquisition of profits" is treated as personal property, not real property, and is therefore excluded

from the statute of frauds. Morrill v. Colehour, 82 Ill. 618, 1876 WL 10268, at *5 (Ill. 1876);

see also Van Housen v. Copeland, 180 Ill. 74 (Ill. 1899). From this proposition, Mirabella

4

reasons that the bankruptcy court was required to consider parol agreements between The

Formula and the unit buyers that modified the rights provided by the settlement agreements.

This argument, however, misinterprets basic principles of contract law.  Whether a

contract falls within the statute of frauds or outside of it, the parol evidence rule prevents a court

from examining extrinsic evidence to modify unambiguous provisions of a written contract.

E.g., Farmers Auto. Ins. Ass'n v. Wroblewski, 887 N.E.2d 916, 923 (Ill. App. Ct. 2008).  Even if

parol contracts between the parties are not governed by the statute of frauds and are thus not

void, the court may not consider them because the settlement agreements here are unambiguous.

They explicitly define "buyer" as the unit buyer who executed the contract.  The Formula is

defined as "Formula," thus making clear that the unit buyers and The Formula are separate

parties.  As the bankruptcy court correctly found, nothing in the settlement agreements provides

The Formula with any right to receive the resale profits or the extension fees.

Mirabella also urges that the unit buyers and The Formula were joint venturers, but this

too is irrelevant.  The settlement agreements are explicit that the unit buyer, not the unit buyer's

joint venture with The Formula, is the "buyer."  The agreements do not list any joint ventures as

parties.  Thus, because the purported joint ventures were not parties to the settlement

agreements, those agreements cannot grant them any rights.  Moreover, the settlement

agreements clearly carve out individual rights and obligations for both the unit buyers and The

Formula.  Just as the settlement agreements confer on the unit buyers the sole rights to recover

resale profits and extension fees, they confer on the Formula the right of first refusal to buy thirty

percent of units in future construction projects (paragraph 30) and the obligation to pay $500,000

in liquidated damages if The Formula failed to take certain action (paragraph 21).

Mirabella argues that as a matter of law, the unit buyers' rights to resale profits and

extension fees were held by the unit buyers in trust for the benefit of The Formula and their joint

venture with The Formula.  See Maxwell v. McWilliams, 145 Ill. App. 155, 1908 WL 2161, at

*12 (Ill. App. Ct. 1908) ("[S]yndicate or association subscriptions to purchase land or interests in

land, or perhaps any other purchasable commodity, establish, if not a partnership, at least such

fiduciary relations between the associates as impose a trust character on funds confided by the

others to the purchasing agents . . . ."). But this argument is also a nonstarter, because the

settlement agreements, in apportioning the proceeds of the joint ventures, expressly grant the

payments to the unit buyers.  See Richton v. Farina, 14 Ill. App. 3d 697, 704 (Ill. App. Ct. 1973).


Ultimately, Mirabella ignores the fundamental fact that the 78 unit buyers could have, but

expressly chose not to, assign their rights.  Paragraph 7 of the settlement agreements explicitly

provides for assignment of the unit buyer's rights: "Buyer may assign this Contract with written

notice of assignment to [debtor] providing [debtor] with the name and address of the Assignee."

The Formula's "opt-in" offer provided each unit buyer with an opportunity to assign his rights.

The unit buyers thus could have assigned their rights to The Formula, or to a joint venture, had

they wanted to do so.  These 78 unit buyers chose not to assign their rights, and Mirabella cannot

now assert a claim on their behalf.

Mirabella also contests the bankruptcy court's finding that Mirabella is not entitled to the

commissions under paragraph 27 of the settlement agreements because The Formula did not

appoint itself as the commission recipient broker.  Mirabella argues that debtor's prior material

breaches of the settlement agreements made it impossible for The Formula to appoint itself as the

broker, and it would have done so had debtor not breached the settlement agreements. This contention is unpersuasive. In its claim, The Formula stated that "Formula would have designated a licensed Illinois broker to receive [the commission] and refund it to Formula." This unambiguous statement makes it clear that The Formula actually intended to appoint another entity as broker, not to serve as broker itself.

Moreover, Mirabella's argument appears to rely on the wrongful prevention doctrine, which is inapplicable to this situation. Mirabella reasons that by breaching the settlement agreements, debtor made it "impossible" for The Formula to appoint itself as broker and "excused" The Formula from "due performance to appoint itself to receive the Commissions." In support of this position, Mirabella cites Chicago Title and Trust Co. v. Hedges Mfg. Co., Inc., 414 N.E.2d 232 (Ill. App. Ct. 1980) (citation omitted), which stands for the proposition that "where one contracting party can show that the other prevented his performance of the contract, it is to be taken as prima facie true that he would have accomplished it if he had not been so prevented." Id. at 237; see also Cummings v. Beaton & Assocs., Inc., 618 N.E.2d 292, 303 (Ill. App. Ct. 1992) (reciting the wrongful prevention doctrine rule that "a party who prevents the fulfillment of a condition upon which his own liability rests may not defeat his liability by asserting the failure of the condition he himself has rendered impossible"). But here, Mirabella has not made any attempt to show that debtor's breaches prevented The Formula from appointing itself as broker. See, e.g., Quantum Mgmt. Group, Ltd. v. Univ. of Chicago Hosps., 283 F.3d 901, 906 (7th Cir. 2002) ("The doctrine is simply inapplicable in this case because nothing suggests that [the defendant] wrongfully prevented the Plan from achieving an operating gain."). Mirabella's reliance on the wrongful prevention doctrine is thus misplaced.

## CONCLUSION

For the foregoing reasons, the decisions of the bankruptcy court are affirmed. The status hearing previously set for January 28, 2011, is cancelled.

**ENTER:**     **January 26, 2011**

**Robert W. Gettleman**
**United States District Judge**